UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH E. TOMPOR,** | **2:24-CV-11843-TGB-APP** |
| Plaintiff, | HON. TERRENCE G. BERG |
| **v.** | **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (ECF NO. 10)** |
| **COMERICA BANK,** | |
| Defendant. | |

In this case, Plaintiff Kenneth Tompor ("Tompor") is suing Defendant Comerica Bank ("Comerica) for damages arising from the bank's foreclosure of Tompor's high-value home. Tompor initially sued Comerica Bank for wrongful foreclosure, but now seeks to amend his complaint to replace the wrongful foreclosure count with a breach of contract claim because he was able to sell the house during a distressed sale. For the reasons explained below, Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 10) will be **DENIED**.

## I.   BACKGROUND

The property at issue is located at 3089 Paint Creek[1] Drive, Oakland, 48363 Michigan, and legally described as Lot 17, Adams Road

---

[1] The Amended Complaint describes the address as "Paint Creed Drive," which appears to be a typographical error, as there is no street called Paint Creed Drive in Oakland Township, and the documents attached to the Complaint refer to a property located on Paint Creek Drive.

Estates Subdivision (the "Property"). *Am. Compl.*, ECF No. 10, PageID.358, ¶ 4. Tompor and his wife were the owners of the Property. *Id.* at ¶ 5. When Tompor's wife passed away, she vested all legal and equitable title to him. *Id.* at ¶ 6.

In 2014, Tompor executed a Note to Comerica in the amount of $560,000.00. *Id.* at ¶ 7; *Note*, ECF No. 1, PageID.17–36. As security for the loan, Tompor granted a mortgage on the Property in favor of Comerica to Mortgage Electronic Registration Systems, Inc. ("Senior Mortgage" identified as #4409). *Am. Compl.*, ECF No. 10, ¶¶ 8-9; *Mortgage*, ECF No. 1, PageID.61–80. The Senior Mortgage was assigned to Comerica on September 29, 2020. *Am. Compl.*, ECF No. 10, ¶ 10; *Assignment*, ECF No. 1, PageID.38.

Since granting the Senior Mortgage to Comerica, Tompor alleges he had been set up for automatic payments with Comerica's loan servicer, PHH Mortgage Services. *Am. Compl.*, ECF No. 10, ¶ 14. In 2020, Tompor entered into a COVID-19 forbearance program with the loan servicer. *Id.* at ¶ 11. In December 2022, Tompor entered into a Loan Modification Agreement with PHH Mortgage Services modifying the terms of the Note and Senior Mortgage to lower his monthly payments. *Loan Modif. Agr.*, ECF No. 3-5, PageID.201–11. After receiving a notice from the loan servicer in 2023 that Tompor did not correctly complete the COVID-19 forbearance forms and was therefore delinquent on loan payments,

Tompor revised the forms and came current on delinquent payments. *Id*. at ¶¶ 12-13.

But Tompor alleges that "for some inexplicable reason," starting in October 2023, the loan servicer stopped taking automatic payments from his bank account. *Id*. at ¶ 18. As a result, no payments had been made on the Senior Mortgage since October 2023 and Tompor became delinquent. On March 18, 2024, Comerica sent a Notice of Foreclosure to Tompor, including information about Homeowners Assistance Programs. *Notice of Foreclosure*, ECF No. 13-2, PageID.403. By then, Tompor had accrued an outstanding balance of $27,680.40, which included $4,227.10 each month from November 2023 to April 2024. *Delinquency Notice*, ECF No. 13-3, PageID.412. On March 21, 2024, Trott Law, P.C., debt collector for Comerica, sent Tompor a notice of debt collection with regards to the Senior Mortgage with instructions to dispute the debt by April 28, 2024. *Debt Collection Notice*, ECF No. 13-3, PageID.412. The notice also advised that failure to bring the loan current may lead to foreclosure and that the loan had been referred to an attorney to start foreclosure proceedings. *Id*. at PageID.410. Furthermore, a notice of foreclosure by advertisement was posted on the Property on March 27, 2024, and published in the Oakland County Legal News on March 26, April 2, April 9, and April 16, 2024. *Affidavit of Publication*, ECF No. 10, PageID.361; *Affidavit of Posting*, ECF No. 10, PageID.372. The amount due and owing on the Senior mortgage on the date of those notices was $574,370.30. *Id*.

Plaintiff admits he became aware that Comerica was foreclosing on the Property in April 2024. *Am. Compl.*, ECF No. 10, ¶ 15.

Yet, Tompor did not cure the default before the foreclosure sale. On April 30, 2024, the Property went to the Sheriff's Sale and Comerica purchased the Property for $804,112.41. *Id.*, at ¶ 16; *Sheriff's Deed of Sale*, ECF No. 10, PageID.368. This amount consisted of the total amount due and owing at the time of the sale on the Senior Mortgage and another mortgage on the Property ("Junior Mortgage" identified as #6883) for a $250,000.00 home equity line of credit delivered to Comerica in 2018. ECF No. 3-6, PageID.213–15.[2] On May 20, 2024, Comerica discharged the $560,000.00 loan secured by the Senior Mortgage as fully paid and satisfied. *Satisfaction of Mortgage*, ECF No. 13-6, PageID.425.

The statutory six-month redemption period was scheduled to expire on October 30, 2024. *Am. Compl.*, ECF No. 10, ¶ 17. The redemption amount was $804,112.04, plus interest. *Affidavit of Purchaser*, ECF No. 10, PageID.373. Tompor commenced this action in Oakland County Circuit Court against Comerica to set aside the Sheriff's Sale. *Compl.*,

---

[2] While Plaintiff only challenges the default of the Senior Mortgage in his Amended Complaint, it appears he was also in default on the Junior Mortgage at the time of foreclosure. On January 3, 2024, Comerica sent a Notice of Mortgage Breach to Plaintiff advising him of the past due payments on the Junior Mortgage. ECF No. 13-4, PageID.415. Defendant alleged Plaintiff attempted to make a partial payment on the Junior Mortgage, but the payment was reversed for insufficient funds. ECF No. 3, PageID.160. Comerica proceeded with foreclosure proceedings on the Junior Mortgage. *Id.*

ECF No. 1, PageID.12. The state circuit court granted Tompor's preliminary injunction request and tolled the period of redemption on June 26, 2024. *Order Granting Pl.'s Motion for Prelim. Inj.*, ECF No. 10, PageID.381.

Comerica removed the case to federal court on July 17, 2024, and filed a Motion to Dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. ECF Nos. 1 & 3. But in January 2025, before the hearing on the motion, Tompor was able to sell the Property to a third-party, allegedly for less than fair market value. *Pl.'s Motion for Leave to File Am. Compl.*, ECF No. 10, PageID.352. Thereafter, Tompor filed a Motion for Leave to File an Amended Complaint, seeking to remove the request for declaratory relief—because he was able to sell the property—and replace it with a Breach of Contract claim. ECF No. 10. After Tompor conceded the original complaint was moot, the Court granted Comerica's Motion to Dismiss without prejudice and allowed Comerica time to file a Response to Tompor's Motion for Leave to File an Amended Complaint. The Motion has been fully briefed.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend the complaint] when justice so requires." Whether to allow an amended pleading under Rule 15(a) is within the Court's discretion. *Tucker v. Middleburg Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008). However, "courts need not give leave to amend when

doing so would be futile," *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014), such as "when the proposed amendment would not permit the complaint to survive a motion to dismiss" under Rule 12(b)(6), *Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citation omitted), or when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party," *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 12(b)(6) permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). In evaluating whether a complaint can survive a motion to dismiss, courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of his grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Allegations must be "enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 545, 570.

6

## III.   DISCUSSION

Tompor seeks to amend his complaint to change the relief requested, from setting aside the foreclosure sale under a wrongful foreclosure theory, to recovering damages under a breach of contract theory. ECF No. 10. Under Michigan law, a party asserting a breach of contract must "establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014).

There is no dispute that a contract exists between Plaintiff and Comerica, as evidenced by the Note and Mortgage. *Am. Compl.*, ECF No. 10, ¶¶ 7, 8. While Plaintiff omitted the exhibits from his Proposed Amended Complaint, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). This includes "documents such as those relating to the mortgage transaction, assignment, and foreclosure because they are referenced in plaintiffs' complaint and are central to their claims." *Nino v. Flagstar Bank, FSB*, No. 16-14407, 2017 WL 9802627, at *2 (E.D. Mich. Dec. 31, 2017), *report and recommendation adopted*, No. 2:16-CV-14407, 2018 WL 1556235 (E.D. Mich. Mar. 30, 2018), *aff'd*, 766 F. App'x 199 (6th Cir. 2019). Because Tompor refers to the Note, Mortgage, Assignment, and

other documents related to the foreclosure in the Amended Complaint, the Court can consider them part of the pleadings for purposes of determining whether the amendment would be futile.[3]

Tompor also states he suffered money damages in excess of $75,000.00 because of Comerica's alleged breach. *Am. Compl.*, ECF No. 10, ¶¶ 21, 30. During oral argument, Tompor explained the damages consist of the difference between the fair market value of the property and the distressed sale price it sold for. Because Plaintiff did not allege specific amounts, the Court is unable to verify whether the difference between the actual sale price and the fair market value exceeds $75,000.00 such that the Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332. Setting aside for a moment whether it is plausible that the fair market value exceeded the sale price by at least $75,000.00, a proposition that the Court cannot necessarily accept without more specific allegations, the Court would lack jurisdiction and would be required to remand the suit to state court in the event the difference is determined to be lower. Furthermore, Tompor's delay in

---

[3] *See Note*, ECF No. 1, PageID.17–36; *Mortgage*, ECF No. 1, PageID.61–80; *Assignment*, ECF No. 1, PageID.38; *Loan Modif. Agr.*, ECF No. 3-5, PageID.201–11; *Foreclosure Notice*, ECF No. 13-2, PageID.403; *Debt Collection Notice*, ECF No. 13-3, PageID.412; *Affidavit of Publication*, ECF No. 10, PageID.361; *Affidavit of Posting*, ECF No. 10, PageID.372; *Sheriff's Deed of Sale*, ECF No. 10, PageID.368; *Satisfaction of Mortgage*, ECF No. 13-6, PageID.425; *Affidavit of Purchaser*, ECF No. 10, PageID.373; *Order Granting Pl.'s Motion for Prelim. Inj.*, ECF No. 10, PageID.381.

seeking to amend the Complaint is justified in light of his inability to determine whether there would be any monetary damages from the alleged breach until he sold the Property in January 2025.

The problem with Tompor's Complaint, however, is that it does not sufficiently plead the breach and causation elements. The crux of the issue at this stage is that Tompor failed to plausibly show that *Comerica* (rather than the servicer) breached any terms of the contract between them, or that Comerica otherwise *caused* Plaintiff's default when the loan servicer, PHH Mortgage Services, stopped withdrawing automatic payments in November 2023.

More specifically, Tompor alleges:

¶ 28. Defendant [Comerica] did not timely withdraw [Tompor]'s automatic loan payments, which [Tompor] set up with Defendant's [Comerica]'s servicer several years ago.

¶ 19. Defendant [Comerica] was current on any past due loan payments prior to any foreclosure and/or any acceleration letters being sent, and only became delinquent after Defendant [Comerica] stopped taking payments from the plaintiff's bank account.[4]

¶ 25. Defendant [Comerica] materially breached the Note and/or mortgage because Defendant [Comerica] refused

---

[4] The factual allegation in paragraph 19 is less than clear, stating that "Defendant," which would be Comerica, "was current on any past due loan . . . and only became delinquent after Defendant stopped taking payments from plaintiff's bank account." The Court infers, based on the rest of the Amended Complaint, and Plaintiff's theory of the case, that Tompor intended to say that *plaintiff* was current and only became delinquent due to Comerica's actions.

and/or failed to accept plaintiff's loan payments even though plaintiff was current on the subject loan.

*Am. Compl.*, ECF No. 10. But under this "failure to withdraw payments" theory, Comerica can only be liable if the actions of the *loan servicer*—who is not a party in this suit—can be imputed to Comerica. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (holding that plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Albrecht*, 617 F.3d at 893 (quoting *Ashcroft*, 556 U.S. at 678–79) (noting that a plaintiff falls short if they plead facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct").

In his Reply brief, Tompor argues the loan servicer was Comerica's *agent* and the bank is responsible for the alleged unlawful actions taken by the loan servicer under Comerica's actual or apparent authority. *See Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 735 (2016) (citation omitted) ("A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort."). Thus, the existence of an agency relationship between Comerica and the loan servicer is crucial to alleging Comerica's liability here. This is particularly true as the Mortgage clearly states that Comerica, as the Note purchaser, does not assume any

mortgage loan servicing obligations, unless the loan is serviced by Comerica or Comerica provides otherwise:

> [If] the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer . . . and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

*Mortgage*, ECF No. 1, PageID.70. The Complaint alleges Comerica was the Note purchaser, ¶ 7, and PHH Mortgage Services was the Loan Servicer, ¶ 11. It is unclear at this stage whether PHH Mortgage Services is an independent Loan Servicer or is acting on behalf of Comerica. *See, e.g.*, *Loan Modif. Agr.*, ECF No. 3-5, PageID.202 ("Comerica Bank is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. PHH Mortgage Corporation remains servicer for said underlying mortgage loan agreement.").

But while the existence of an agency relationship is generally a question for the jury to decide, *Vargo v. Sauer*, 457 Mich 49, 71 (1998), the plaintiff must still "sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss." *McWilliams v. S.E., Inc.*, 581 F. Supp. 2d 885, 893 (N.D. Ohio Aug. 26, 2008). Here, Plaintiff presents only a conclusory assertion in the Amended Complaint that PHH Mortgage Services was "defendant's servicer." *Am. Compl.*, ECF No. 10, ¶ 14. Plaintiff has not pled the existence of an agency relationship between Comerica and the loan

servicer. There are no allegations, for example, that Comerica exercised any authority or control over the loan servicer, or that the servicer was acting on behalf of Comerica. *See Laster*, 316 Mich. App. at 735 ("In an agency relationship, it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability."); *Dobronski v. NPS, Inc.*, No. 356617, 2022 WL 1194212, at *4 (Mich. Ct. App. Apr. 21, 2022) (citing 1 Restatement Agency, 3d, § 1.01 comment f(1)) ("An essential element of agency is the principal's right to control the agent's actions.").[5]

But even assuming for the sake of argument that Tompor sufficiently pled the existence and scope of an agency relationship between Comerica and the servicer, any alleged failure on behalf of the loan servicer to withdraw funds from Plaintiff's account did not absolve *Plaintiff* from his own responsibility to pay the debt *and cure the default*. To the contrary, a court in this Circuit found that plaintiffs were "not justified in failing to pay the full amount of real estate taxes and insurance premiums due on their property" pursuant to the terms of the mortgage, despite the servicer's failure to notify them of the correct amount. *Uhler v. Ocwen Loan Servicing LLC*, No. 08-00457, 2011 WL 13202500, at *2–4 (S.D. Ohio Sep. 30, 2011). Plaintiffs remained

---

[5] Indeed, Plaintiff only raised the existence of the agency relationship for the first time in his Reply brief. *See Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003) (new arguments in a reply brief vitiate a nonmovant's ability to respond).

"undisputably" responsible for paying annual amounts for taxes and insurance under the mortgage despite the servicer's "egregious errors" and mishandling of plaintiffs' payments. *Id*. Plaintiffs were justified in withholding payment for late fees penalties but not for failing to pay the full amount pursuant to the terms of the mortgage agreement. *Id*.

Similarly here, Tompor had an obligation to make the payments on his loan. He was not justified in failing to pay the monthly amounts and cure the default despite the servicer's alleged breach—egregious or not. It may be that Tompor would have been justified in declining to pay late fees, like the Uhlers, because of the servicer's failure to timely withdraw payments. *See id.*; *see also Kiff Contractors, Inc. v. Beeman*, 10 Mich. App. 207, 210 (1968) ("[A] party to a contract cannot prevent, or render impossible, performance by the other party and still recover damages for nonperformance."). But the servicer's failure to timely withdraw payments does not *fully* excuse Plaintiff's obligation to pay the debt and cure the default pursuant to the terms of the mortgage. In fact, the Mortgage clearly stated Plaintiff's duty to timely pay the debt regardless of possible future claims against Comerica:

> Borrower and Lender covenant and agree as follows:
>
> 1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**. *Borrower shall pay* when due the principal of, and interest on, the debt evidenced by the Note . . . *No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under*

*the Note* and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

*Mortgage*, ECF No. 1, PageID.64 (emphasis added); *see also Loan Modif. Agr.*, ECF No. 3-5, PageID.202–03 ("Borrower will be in default [if] Borrower fails to make the New Monthly Payments as required by this Agreement.").

Plaintiff cites no caselaw suggesting that an automatic withdrawal agreement transfers the duty to pay from the borrower to the servicer, nor does he point to any agreement between him and PHH Mortgage Services that says as much.[6]

Where the borrower *does* make full and timely payments to the loan servicer pursuant to the terms of the mortgage agreement, but the loan servicer is at fault for not forwarding that money to the bank, the Michigan Court of Appeals refused to blame the borrowers. *See Meretta v. Peach*, 195 Mich. App. 695, 699-700 (Mich. App. Ct. Sep. 8, 1992). But that is not the situation here. Plaintiff never alleged he made the payments, or attempted to cure the default, or even that he had sufficient funds in his account to make the payments. Plaintiff only states that "for some inexplicable reason," the loan servicer stopped taking or accepting

---

[6]     This may, in fact, prove fatal to this motion to amend on its own since Michigan law requires that "[i]f a claim . . . is based on a written instrument, a copy of the instrument . . . must be attached to the pleading . . . unless the instrument is . . . in the possession of the adverse party and the pleading so states." Mich. Ct. R. 2.113(C)(1)(b).

payments from him. *Am. Compl.*, ECF No. 10, ¶ 18. While Plaintiff wants the Court to infer that the servicer stopped taking payments in "bad faith" when funds were in fact available in the account, Plaintiff did not even allege that he would have been *able* to pay the amount in November 2023. Although Tompor had alleged in his original complaint that he was "able and willing" to redeem the property, he includes no such language in the Amended Complaint concerning his ability to make the delinquent payments.

Even assuming for the sake of argument that the loan servicer's actions may be imputed to Comerica, the Amended Complaint fails to adequately plead causation between the loan servicer's failure to withdraw payments and the resulting default. While Plaintiff wants the Court to infer that the loan servicer stopped withdrawing payments "for some inexplicable reason," such action by the loan servicer, for whatever the reason, was not the cause of the default because Plaintiff retained the obligation to make the payments through other means. The fact that Plaintiff did not do so suggests that a plausible reason the loan servicer stopped withdrawing payments was because Plaintiff did not have sufficient funds to cover such withdrawals.

This inference is supported by the simple fact that Plaintiff did not cure the default before the foreclosure sale despite admitting receiving notice of the proceedings. By March 18, 2024, Plaintiff had accrued an outstanding balance of $27,680.40, which included $4,227.10 each month

15

from November 2023 to April 2024. *Delinquency Notice*, ECF No. 13-3, PageID.412. The debt collector instructed Tompor to dispute the debt by April 28, 2024, or it would assume the information was correct. *Debt Collection Notice*, ECF No. 13-3, PageID.409; *see also Jose v. Malarz*, No. 347154, 2019 WL 6519248, at *4 (Mich. Ct. App. Dec. 3, 2019) (requiring defendant to "take reasonable steps" to facilitate the purchase, including "reasonable timeframes and deadlines," even though defendant was "skeptical" about plaintiff's ability to pay based on her payment history). Plaintiff did not dispute the debt or otherwise cure the default, so Comerica foreclosed on the Property under the terms of the Mortgage. This timeline undermines the Plaintiff's allegation that the cause of the delinquency was Comerica's rejection of the automatic payments. Thus, Plaintiff failed to "nudge" his causation inference "across the lines from conceivable to plausible." *See Iqbal*, 556 U.S. at 678.

Because the payments were in default, Comerica was allowed to begin the foreclosure process based on the terms of the Mortgage. The contract was clear about the consequence of an uncured default, including acceleration and foreclosure:

> 22. **Acceleration; Remedies**. . . . If the default is not cured on or before the date specified in the notice, lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke power of sale and any other remedies permitted by Applicable Law.

*Mortgage*, ECF No. 1, PageID.29. Therefore, because Tompor does not dispute receiving notice of the foreclosure, Comerica was allowed to foreclose on the Property pursuant to the terms of the contract. *Am. Compl.*, ECF No. 10, ¶ 15. Foreclosure is undoubtedly a harsh consequence, but Tompor knowingly entered into such a contract with Comerica. *See Cheff v. Edwards*, 203 Mich. App. 557, 560–61 (1994) ("[F]oreclosure by advertisement is . . . based on contract between the mortgagor and the mortgagee. . . . [T]he statute[ ] may be viewed as harsh or offensive but . . . [it] applies equally to all who choose to involve themselves in this type of business.") (internal quotations and citations omitted).

Therefore, because Plaintiff's Breach of Contract claim against Comerica fails to state a claim upon which relief can be granted, the proposed Amendment would be futile, and the Plaintiff's motion to amend the complaint must be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 10) is **DENIED**. The case is dismissed **WITH PREJUDICE**.

**SO ORDERED**.

Dated: September 30, 2025          /s/Terrence G. Berg
                                   TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE